IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HOLTRA CONSTRUCTION, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>RICHARD E. TAKACH, JR.,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:11CV555DAK<br><br>Judge Dale A. Kimball |

      This matter is before the court on Defendant Richard E. Takach, Jr.'s Motion to Dismiss for Lack of Personal Jurisdiction.  The court held a hearing on the motion on November 3, 2011.  At the hearing, Plaintiff was represented by Robert Babcock and Jeff Handy and Defendant was represented by Scott Bell.  The court took the matter under advisement.  The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

      This case arises from the construction of two hotels in Arizona in 2007 and 2008.  Plaintiff Holtra Construction was the general contractor for the construction of the hotels, which were owned by Zanjero Hotel Partners, LLC ("Zanjero").  Defendant Takach had an interest in Zanjero through NW of Glendale, LLC ("NWG").  As a side agreement to the primary construction contract, Holtra, Zanjero, NWG, Takach, and others entered the Cross Indemnity,

Guaranty, and Reimbursement Agreement in April 2007 ("Agreement"). In the Agreement, Takach and others contractually guaranteed the payment of funds to Plaintiff Holtra Construction for certain cost overruns associated with the construction of the hotels.

Takach is a resident of the state of Washington. Holtra is an Arizona limited liability company with its principal place of business in Utah. Zanjero is an Arizona limited liability company, and NWG is a Washington limited liability company. The other signatories to the Agreement include Zanjero Cabela LLC, an Arizona limited liability company, Paul E. Christensen, a Washington resident, Derrick Tran, a California resident, and Patini LLC, an Arizona limited liability company.

The parties began negotiations regarding the two Arizona hotels in early 2006. At the first meeting, Takach met with two Holtra representatives, Bruce Holmes and Derrick Tran, at the proposed sites of the hotels in Glendale, Arizona. At that meeting, the parties began discussions concerning the financing for the project and Holtra's role as general contractor.

On December 8, 2006, Takach engaged in negotiations with Holtra in Salt Lake City, Utah. Takach was in Utah on other business and took the opportunity to meet with Holtra because negotiations regarding the construction project was on-going at that time. During those negotiations, the parties discussed financing and the potential for cost overruns in connection with the project. Holtra alleges that Takach verbally agreed at that meeting that he would personally guarantee cost overruns for the project. The parties dispute whether a verbal contract was formed at the meeting. In any event, those verbal discussions and agreement led to the execution of the Agreement in 2007. Therefore, Holtra alleges that the Agreement was negotiated in part between Takach and the managers of Holtra in Salt Lake City.

In the Agreement, NWG agreed to reimburse Holtra for specifically defined cost overruns in the construction of the hotels under certain circumstances. Takach was one of several people who agreed to guarantee the reimbursement payments if contractual conditions were satisfied.

Takach alleges that he did not seek out the Agreement. The Agreement was ancillary to the primary negotiations surrounding the construction and management of the two hotels. Takach states that Holtra representatives reached out to him to negotiate the Agreement.

Takach states that the majority of negotiations regarding the construction of the hotels were done on the telephone and he participated from Washington. He states that most of the parties on the telephone calls were from Washington and Arizona, although Holtra would have participated from Utah. Takach also asserts that most of the in-person meetings were conducted in Arizona. Takach, however, does acknowledge that he met with Holtra in Utah on December 8, 2006. After all the terms of the construction contract and the Reimbursement Agreement were negotiated and agreed upon, Takach signed the agreements in Washington in April 2007. Takach states that signatories of the agreements signed the contract in California, Arizona, Washington, and Utah.

Takach does not believe that Utah has been affected by or played a role in the underlying construction project or the performance of the Agreement. Holtra believes that Utah has been affected because Holtra signed the agreements in Utah. Moreover, as general contractor on the project, Holtra managed it, obtained bids, sent out subcontracting agreements, and paid bills from its office in Utah. During the course of the project, Holtra and Takach engaged in hundreds of email correspondence relating to the project. At the time of those emails, Holtra had its principal place of business in Utah even though it was an Arizona company managing the construction of

hotels in Arizona.

After construction of the Arizona hotels had commenced, Holtra claimed that it needed additional funding for the project due to cost overruns. Tran, on behalf of Holtra, traveled to Washington to negotiate a Promissory Note with Paul Christensen, who is a business associate of Takach and a party to the Agreement. The Promissory Note was negotiated in Washington and signed by Takach in Washington. When Holtra sent Takach a notice purporting to indicate that he was required to make payments under the Agreement, the notice was sent to Takach in Washington.

## DISCUSSION

### Motion to Dismiss

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant Richard E. Takach, Jr. moves to dismiss Plaintiff's Complaint for lack of personal jurisdiction, arguing that he lacks the requisite contacts with the State of Utah to be subject to personal jurisdiction in this court. Holtra, however, alleges that specific personal jurisdiction exists over Takach for purposes of the present breach of contract dispute.

When a court's jurisdiction is contested, the plaintiff "bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Electronic Realty Assoc. v. Vaughan*, 897 F. Supp. 521, 521 (D. Kansas 1995) (citing *McNutt v. General Motors*, 298 U.S. 178, 189 (1936)). However, in the preliminary stages of litigation, the plaintiff's burden is only to establish a prima facie case that jurisdiction exists. *Electronic Realty Assocs. v. Vaughan Real Estate, Inc.,* 897 F. Supp. 521, 522 (D. Kan. 1995). "Where . . . there has been no evidentiary hearing, and the motion to

dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.*; *see also Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1995). All factual disputes are resolved in favor of the Plaintiff when determining the sufficiency of this showing. *Wenz v. Memory Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

Courts recognize two types of personal jurisdiction–general and specific. Holtra does not allege that there is general jurisdiction over Takach in Utah. Therefore, the court will only consider whether there is specific personal jurisdiction over Takach. The Utah Supreme Court has stated that "specific jurisdiction gives a court power over a defendant only with respect to claims arising out of particular activities of the defendant in the forum state. For such jurisdiction to exist, the defendant must have certain minimum local contacts." *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992).

"The proper test to be applied in determining whether personal jurisdiction exists over a nonresident defendant involves two considerations. First the court must assess whether Utah law confers personal jurisdiction over the nonresident defendant. . . . Second, assuming Utah law confers personal jurisdiction over the nonresident defendant, the court must assess whether an assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *State ex rel. W.A.*, 63 P.2d 607, 612 (Utah 2002). "This test is merely a refinement of [the Utah Supreme Court's] previous tests governing the assertion of personal jurisdiction. It recognizes that the legislature may provide for the extension of personal jurisdiction in statutes other than the long-arm statute." *Id.* The court explained that "[u]nder this new test, however, any legislative enactment of personal jurisdiction, in or out of the long-

arm statute, cannot justify on its own the assertion of jurisdiction. The true safeguard on the extension of personal jurisdiction is the constitutional due process analysis, with its focus on minimum contacts and on traditional notions of fair play and substantial justice." *Id.*

In this case, Holtra relies only on the long-arm statute as a statutory basis for jurisdiction. Utah's long-arm statute provides, in pertinent part, as follows:

> Any person ... who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>   (1) the transaction of any business within this state;
>    . . . .

Utah Code Ann. § 78-27-24. The statute broadly defines "transaction of business" to mean "activities of a non-resident . . in this state which affects persons or business within the State of Utah." *Id.* § 78-27-23(2). The long-arm statute states that it is intended to be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* § 78-27- 22; *see also Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999).

Consistent with the long-arm statute's command to apply it as broadly as permitted by due process, the Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998). Therefore, this court will first determine whether the exercise of personal jurisdiction over Takach meets federal due process standards.

Under due process standards, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and

the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (citations omitted).  The "minimum contacts" necessary for specific personal jurisdiction are established " 'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.' " *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).  If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)).

Under the first prong of the due process analysis, the court should "examine the quantity and quality of [defendant's] contacts with Utah, including prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, to determine whether the exercise of personal jurisdiction over [defendant] comports with due process." *Id.*; *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992).

For purposes of specific jurisdiction, this court looks only to the contacts between Takach and the State of Utah with respect to Holtra's breach of contract claim.  Takach's contacts with Utah are limited to some interstate communications with Holtra regarding the work being done in Arizona and one meeting in Utah with Holtra in December of 2006.  During the December 2006 meeting, Holtra contends that Takach verbally agreed to a separate cost overrun agreement.  The actual written agreement that is the basis for the breach of contract claim was entered into by the

parties several months later, and Takach signed that agreement in Washington.

Holtra asserts that it is unreasonable for Takach not to anticipate the possibility of being sued in this state in relation to his agreement with Holtra, which has its principal place of business in Utah.  But the mere fact that a nonresident enters into a contract with a resident of the forum is insufficient to establish jurisdiction.  *Far West*, 828 F. Supp. at 914.  In this case, Takach contracted with an Arizona company that has its principal place of business in Utah to construct hotels in Arizona.  As in *Soma Medical*, the fact that Holtra was based in Utah was of no consequence to Takach.  *Id.* ("The fact that Soma happened to be a resident of Utah was of no consequence to [defendant].").  "'[T]here is no indication that Utah had anything but a fortuitous role in the parties past dealing or would have any role in their continuing relationship.'" *Id.* (quoting *Far West*, 46 F.3d at 1080).

Holtra performed some of its work under the contract in Utah, but that does not support a finding of jurisdiction in Utah over Takach.  Holtra's determination to do work in Utah was a unilateral decision.  "Unilateral activity of those claiming a relationship with a nonresident defendant is not sufficient and 'it is essential in each case that there be some act by which the defendant purposely [sic] avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of the laws.'" *Far West*, 46 F.3d at 1075.

In *Far West*, the court determined that the location of an escrow account in Utah that the nonresident defendant could claim funds from was no indication of purposeful availment by the nonresident defendant because the plaintiff had unilaterally determined to place the escrow account in Utah.  *Id.*  Similarly, in this case, the fact that Holtra performed some of its work in connection with the construction of the Arizona hotels in Utah provides no indication that

Takach purposefully availed himself of the benefits of this State.

In addition, "'[i]t is well established that phone calls and letters are not necessarily sufficient themselves to establish minimum contacts.'" *Soma Medical*, 196 F.3d at 1299 (quoting *Far West Capital Inc v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995)).  In *Soma Medical*, the court found that a signature card mailed to Plaintiff in Utah, two letters sent to Plaintiff soliciting signature verification, fourteen other written communications, and a few wire transfers of funds to Utah were not enough to establish minimum contacts.  *Id.*  Similarly, in this case, Takach has incidental communications with Holtra.  Holtra states that there were hundreds of email communications, however, it is unclear whether those emails were received by Holtra in Utah given that Holtra managed the project from Utah and Arizona.  As in *Soma Medical*, the court finds that the communications do not establish minimum contacts with the state.

Takach has done nothing to purposefully direct his activities at Utah.  He is a Washington resident, who signed the Agreement in Washington, as part of an agreement for a project in Arizona.  The interested parties are located in Washington, California, Arizona, and Utah.  Only Holtra is located in Utah.  None of the parties' business activities were ever focused on Utah.  The court concludes that Takach's contracting with Holtra, an Arizona corporation with its principal place of business in Utah to manage the construction of hotels in Arizona and engaging in interstate communication with Holtra in connection with the contract is not enough to find that Takach purposefully availed himself of the benefits and privileges of the State of Utah.  Therefore, the court finds that there are not sufficient contacts for this court to exercise specific personal jurisdiction in accordance with due process standards.

In light of the court's due process analysis, it is unnecessary to consider the statutory basis

for jurisdiction under Utah's long-arm statute. Accordingly, Takach's Motion to Dismiss for Lack of Personal Jurisdiction is granted.

## CONCLUSION

Defendant's Motion to Dismiss is GRANTED and this case is dismissed for lack of personal jurisdiction over Defendant. The Clerk of Court is directed to close the case.

Dated this 9th day of November, 2011.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE